UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| CHRISTOPHER L. SCRUGGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:18-cv-00460-JRS-MJD |
| | ) | |
| D. RUSSELL, | ) | |
| MATT LEOHR, | ) | |
| JERRY SNYDER, | ) | |
| CHRISTOPHER NICHOLSON, | ) | |
| DICK BROWN, | ) | |
| FRANK LITTLEJOHN, | ) | |
| KEVIN GILLMORE, | ) | |
| WILSON, | ) | |
| | ) | |
| Defendants. | ) | |

## Order Granting State Defendants' Motion for Summary Judgment and Directing Entry of Final Judgment

Plaintiff Christopher L. Scruggs, an Indiana Department of Correction (IDOC) inmate incarcerated at Wabash Valley Correctional Facility (WVCF), brought suit pursuant to 42 U.S.C. § 1983 for alleged violations of his First and Eighth Amendment rights. Mr. Scruggs alleges that he was housed in allegedly unsanitary conditions of confinement while on suicide watch in May of 2018. Dkt. 11 at p. 2. In addition, he was allegedly placed on suicide watch in retaliation for filing a grievance against Dr. Sims. *Id.* The state defendants, Richard Brown, Frank Littlejohn, Kevin Gilmore, Dusty Russell, Jerry Snyder, Christopher Nicholson, and Melinda Wilson request summary judgment in their favor on all claims asserted against them.

For the reasons explained in this Order, the state defendants' motion for summary judgment, dkt. [107], is **granted**.

### I. Summary Judgment Standard

A motion for summary judgment asks the court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). On summary judgment, a party must show the court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017). The non-moving party bears the burden of specifically identifying the relevant evidence of record. *D.Z. v. Buell*, 796 F.3d 749, 756 (7th Cir. 2015).

### II. Objection to Timeliness

The state defendants did not initially file a dispositive motion by the deadline established in the pretrial order. *See* dkt. 31 (setting dispositive motion deadline of March 2, 2020); dkt. 86 (extending deadline to May 11, 2020). A motion for summary judgment by the two medical

provider defendants was filed on May 11, 2020, dkt. 80, and granted on December 29, 2020, dkt. 96. The state defendants remained in the action.

On May 24, 2021, the state defendants moved to extend the dispositive motion deadline. Dkt. 100. They asserted that upon closer examination of the claims and evidence, they believed a dispositive motion was warranted. *Id.* at 2. Before Mr. Scruggs could respond, the Court granted the motion and set the new dispositive motion deadline for June 11, 2021. Dkt. 102. The state defendants filed their motion for summary judgment on June 9, 2021. Dkt. 107. Mr. Scruggs' opposition to the extension motion was filed June 2, 2021. Dkt. 103. The Court later denied his motion for review by a District Judge of the Magistrate Judge's order granting the extension, dkts. 104, 105, and two motions for clarification seeking an explanation of the decision to grant the extension, dkts. 110-12.

In Mr. Scruggs' response to the state defendants' motion for summary judgment, he does not dispute any of the facts set forth in the motion for summary judgment. Dkt. 114. Instead, he argues again, for the fifth time, that the state defendants should not have been granted leave to file their motion for summary judgment because it was untimely and good cause for the extension was not shown. *Id.* The Court disagrees.

"[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016). Permitting the state defendants to file a motion for summary judgment that could resolve the case on the merits without a jury trial was appropriate, and especially so during this time of the COVID-19 pandemic. The alternative would have been an unnecessary jury trial (the parties had failed to reach a settlement agreement) at the expense of the Court and jurors.

Also in this light, to assess "excusable neglect," courts should consider all relevant circumstances surrounding the party's neglect, including the prejudice to the non-movant, length of delay, and reason for delay. *Bowman v. Korte*, 962 F.3d 995, 998 (7th Cir. 2020). Here, the state defendants' failed to file a timely motion for summary judgment. The length of delay was significant; more than a year passed between the time the dispositive motions were originally due and when the state defendants filed their motion. *See* Dkt. 79. The state defendants' counsel originally determined that a dispositive motion was not appropriate, but upon further review determined that a dispositive motion would narrow or eliminate the need for trial.

Without doubt, Mr. Scruggs believes he has been prejudiced by this delay. However, the extension of the dispositive motion deadline has not resulted in the extension of the trial date. Nor did the dispositive motion alter the nature of Mr. Scruggs' claims or result in additional discovery. As shown below, the undisputed record reflects that even if Mr. Scruggs was permitted to proceed to trial, a directed verdict would be necessary in the absence of any evidence to support his claims.

"Scheduling orders and court-imposed deadlines matter." *Bowman*, 962 F.3d at 998. At the same time, the Court's and the jury's time matters, too. This is a very busy Court and allowing a case to proceed to trial that has no chance of success necessarily takes resources away from other cases waiting for the Court's consideration. In *Bowman,* the Seventh Circuit held that the district court abused its discretion in granting the defendants leave to file a belated *second* motion for summary judgment on their affirmative defense of exhaustion. *Bowman*, 962 F.3d at 998. In that case, the result was that the plaintiff then had the opportunity to pursue his claim on the merits. Here, on the other hand, Mr. Scruggs has been given the opportunity to have his claims resolved on their merits. No affirmative defenses or procedural rules have prevented the discovery and/or presentation of merits-related evidence and arguments. The evidence and arguments set forth

4

below conclusively establish that a jury trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the state defendants are entitled to judgment as a matter of law.

### III. Facts

Mr. Scruggs is, and was at all times relevant to this lawsuit, incarcerated at WVCF. Dkt. 107-1 at 8 (Scruggs deposition). Since arriving at WVCF, Mr. Scruggs has been placed on suicide watch approximately seven or eight times. *Id.* at 17, 25.

On May 7, 2018, Mr. Scruggs was placed on suicide watch at his own request because "the C.O. lied on me and said I hit him with a cup of water." Dkt. 82-1 at ¶ 4 (Inda affidavit); Dkt. 82-2 (suicide watch record); dkt. 82-14 (Sims affidavit); Dkt. 107-1 at 40, 23. Mr. Scruggs requested to be placed on suicide watch "[b]ecause he was upset and depressed and angry." Dkt. 107-1 at 40.

While on suicide watch, certain precautions are taken to ensure that an inmate does not engage in self-harm. Dkt. 82-14 at ¶ 6; dkt. 107-1 at 28. These precautions include limiting the amount of personal property that an inmate has access to, as well as frequent observation of the offender to limit the inmate's ability to engage in self harm. Dkt. 82-1 at ¶ 7; dkt. 107-1 at 28.

On May 7, 2018, Mr. Scruggs was placed in an SCU (understood by the Court to mean Secure Confinement Unit) holding cell on suicide watch. Dkt. 82-14 at ¶ 5; dkt. 107-1 at 56; dkt. 107-2 at ¶ 9 (Russell declaration); dkt. 107-3 (mental health orders). At that time, he was permitted to have a blanket, a suicide smock, and a mattress. Dkt. 82-14 at ¶ 27; dkt. 107-1 at 57; dkt. 107-2 at ¶ 11; dkt. 107-3. His mattress was temporarily taken from him on some occasions when he used it to barricade himself in his cell. Dkt. 82-1 at ¶ 18; dkt. 107-2 at ¶ 11; dkt. 107-3.

On or around May 11, 2018, Mr. Scruggs was removed from the SCU holding cell and placed in a regular holding cell in the WVCF Custody Control Unit (CCU). Dkt. 107-1 at 59-60, 76-77; Dkt. 107-3 at 5. The transfer from the SCU to the CCU was "at the direction of mental

5

health." Dkt. 107-1 at 77. Mr. Scruggs was then transferred back to an SCU holding cell on or around May 18, 2018. Dkt. 82-1 at ¶ 5; dkt. 82-3; dkt. 107-1 at 60; dkt. 107-3 at 11. He remained on suicide watch in an SCU holding cell until on or around May 23, 2018 – a period of 16 days having elapsed since he was first placed on suicide watch in the SCU, with about a week of that period having been spent in a regular CCU cell. Dkt. 107-3.

Mr. Scruggs testified that while in the SCU holding cell, the cell was dry and clear of any standing water. Dkt. 107-1 at 57-58. He testified at his deposition that SCU holding cells were "nasty," "dirty," and that he observed insects and mice while he was in the cell. Dkt. 107-1 at 58.

With regard to his time in a CCU holding cell, Mr. Scruggs testified that his cell was bigger, but that "there's sewer gas coming out that thing," from other offenders using the bathroom, "so it's nasty too." Dkt. 107-1 at 27. He further described the CCU room as a regular or normal-sized cell, with a bed, sink, toilet, table and window. Dkt. 107-1 at 76-77.

At all times while on suicide watch, Mr. Scruggs had access to water and was able to use the toilet. Dkt. 107-1 at 58. He was closely monitored at all times by medical and custody staff, as well as by assigned suicide companions. Dkt. 82-3 – 82-13; dkt. 82-15 – 82-24; dkt. 107-2 at ¶ 13. None of the various individuals who observed Mr. Scruggs reported that the SCU or CCU holding cells were in an unsanitary condition. *Id.*

In May of 2018, all areas of the SCU, including all four holding cells, were regularly cleaned. Dkt. 107-2 at ¶ 14.

### IV. Discussion

#### A. Retaliation Claim

The state defendants argue that they are entitled to summary judgment on Mr. Scruggs' retaliation claim. They argue that Mr. Scrugg's claim fails because the undisputed evidence shows

that he was placed on suicide watch at his own request and maintained on suicide watch by medical staff, not custody staff. Mr. Scruggs did not respond to or refute this argument.

To prevail on his First Amendment retaliation claim, Mr. Scruggs must show that "(1) [he] engaged in activity protected by the First Amendment; (2) [he] suffered a deprivation that would likely deter First Amendment activity; and (3) the protected activity [he] engaged in was at least a motivating factor for the retaliatory action." *Archer v. Chisholm*, 870 F.3d 603, 618 (7th Cir. 2017) (internal citations omitted).

In his deposition, Mr. Scruggs testified that he was initially placed on suicide watch at his own request. Dkt. 82-1 at ¶ 4; dkt. 82-2; dkt. 82-14; dkt. 107-1 at 23, 40. And therefore Mr. Scruggs's placement on suicide watch could not be a result of his filing of a grievance. Instead, the placement on suicide watch was motivated by the need to closely observe Mr. Scruggs and prevent self-harm. There is no evidence that he was placed on suicide watch or kept on suicide watch at the direction of the state defendants or for any improper reason.

The state defendants' motion for summary judgment is granted on Mr. Scruggs's First Amendment retaliation claim.

### B. Conditions of Confinement Claim

Mr. Scruggs' Eighth Amendment conditions of confinement claim against the state defendants is premised on being held in nasty conditions. The state defendants argue that they are entitled to summary judgment because the undisputed evidence shows that the conditions of Mr. Scruggs' confinement on suicide watch for sixteen days in May 2018 were not sufficiently serious to constitute an Eighth Amendment violation. Further, even if Mr. Scruggs was subjected to unconstitutional conditions of confinement, there is no evidence that any state defendant acted with deliberate indifference. Dkt. 108 at 2. Again, Mr. Scruggs did not respond to these arguments.

Although "the Constitution does not mandate comfortable prisons," it does mandate humane ones. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). "By prohibiting cruel and unusual punishment, the Eighth Amendment imposes duties on prison officials to 'provide humane conditions of confinement' and 'ensure that inmates receive adequate food, clothing, shelter, and medical care.'" *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "An official who fails to uphold these duties violates the Eighth Amendment upon exhibiting 'deliberate indifference to a substantial risk of serious harm to an inmate.'" *Id.* (quoting *Farmer,* 511 U.S. at 828).

The Seventh Circuit recently explained that the deliberate indifference standard includes both an objective and subjective component.

> A prisoner challenging conditions of confinement must first show that the conditions were sufficiently serious as an objective matter, meaning that they denied the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety. Second, in covering the subjective component of the inquiry, the inmate must prove that prison officials acted with deliberate indifference—that they knew of and disregarded this excessive risk of harm to the inmate.

*Id.* at 719–20 (7th Cir. 2021) (cleaned up).

Mr. Scruggs' conditions of confinement claim fails because the summary judgment record does not contain evidence that the conditions of confinement violated the Eighth Amendment. The conditions of Mr. Scruggs' confinement which he alleges violated his constitutional rights are (1) the presence of a "chinese toilet" in the SCU holding cells; (2) a lack of bedding while on suicide watch; and (3) the presence of insects in the SCU holding cells. Dkt. 2; dkt. 11; dkt. 96 at 20-21.

In his deposition, Mr. Scruggs testified that while on suicide watch he was allowed to have "[a] blanket, a smock, and a mattress." Dkt. 107-1 at 57. Sometimes the mattress was taken away

8

from him. *Id*. Mr. Scruggs testified that the floor did not have water on it, only that it was "just nasty." *Id.* at 58. The holding cells, which Mr. Scruggs was in for just a portion of the sixteen days of suicide watch, the precise number of days unknown, were "[d]irty . . . mice running around . . . spiders . . . bugs . . . ." *Id.*

Mr. Scruggs's testimony about his cell conditions do not establish a genuine issue of material fact to suggest his conditions were unconstitutional. In *Smith v. Dart*, 803 F.3d 304, 312 (7th Cir. 2015), the Seventh Circuit noted that "[p]est infestations may also form the basis of a[n] . . . Eighth Amendment conditions of confinement claim." However, the success or failure of such a claim is fact-sensitive. *See, e.g., Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (discussing significance of facts such as degree and duration of infestation and prison's abatement efforts). Here, the duration of time spent in the holding cells was minimal (less than 16 days), there was no testimony or evidence to suggest an insect or rodent *infestation*, no evidence to suggest unsanitary conditions, and no evidence to suggest a lack of "reasonably adequate" bedding. Although Mr. Scruggs's mattress had been taken from him when he used it to barricade himself in the cell, there is no argument or evidence that this was an unconstitutional deprivation that caused the conditions of confinement to violate the Eighth Amendment.

Even if the conditions Mr. Scruggs faced were assumed to be sufficiently serious, he has not demonstrated that any of the state defendants "were subjectively aware of these conditions and refused to take steps to correct them, showing deliberate indifference." *Thomas,* 2 F.4th at 720. There is no evidence that any records were generated during Mr. Scruggs 16 days on suicide watch that note any observation or report of unsanitary conditions. Dkt. 82-3 – 82-13; dkt. 82-15 – 82-24; dkt. 107-2 at ¶ 13. There is no evidence that Mr. Scruggs informed any member of prison staff of the conditions which he alleges violate his Eighth Amendment rights. *Id.*

For these reasons, the state defendants are granted summary judgment on Mr. Scruggs' conditions of confinement claim.

## V. Conclusion

The state defendants' motion for summary judgment, dkt. [107], is **granted.** This Order and the Order Granting Defendants Sims and Inda's Motion for Summary Judgment, dkt [96], resolve all claims against all parties. Given the resolution of this action, Mr. Scruggs' Motion for Assistance Recruiting Counsel, dkt. [118], filed after the motion for summary judgment was fully briefed, is **denied as moot.** All other motions pending at the time of this Order, if any, are **denied** as moot. This action is **dismissed** with prejudice. Final judgment consistent with this Order and the Order of December 29, 2020, shall now issue.

**IT IS SO ORDERED**.

Date: 8/19/2021

_JAMES R. SWEENEY II, JUDGE_
United States District Court
Southern District of Indiana

Distribution:

Christopher L. Scruggs
957096
Wabash Valley Correctional Facility - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Zachary Robert Griffin
Indiana Attorney General
zachary.griffin@atg.in.gov

Archer Riddick Randall Rose
Indiana Attorney General
archer.rose@atg.in.gov